```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MINNESOTA
                    Criminal No. 13-61(DSD/AJB)
```

United States of America,

        Plaintiff,

v.                                                **ORDER**

Brian Luke Broulik,

        Defendant.

This matter is before the court upon the objection by defendant Brian Luke Broulik to the July 15, 2013, report and recommendation of Chief United States Magistrate Judge Arthur J. Boylan. Based on a review of the file, record and proceedings herein, and for the following reasons, the court sustains the objection in part.

## BACKGROUND

The background of this matter is fully set forth in the report and recommendation, and the court summarizes only those facts necessary to resolve the current objection. On May 24, 2012, the FBI executed a search warrant for Broulik's address in Blooming Prairie, Minnesota. Mot. Hr'g Tr. 12:21-24. The officers encountered Broulik's roommate, Gary Gardner, who informed them that Broulik was at work at Seneca Foods in Rochester, Minnesota. Id. at 13:22-14:5, 15:4-13. Officers obtained an additional search warrant for Broulik's car and person. Id. at 16:7-12.

When the officers arrived at Seneca Foods, they observed Broulik's car in the parking lot and located Broulik on the second floor of the office building. Id. at 17:9-23. The officers informed Broulik that they had a warrant to search his vehicle. Id. at 18:17-19. Broulik turned over the keys to his car to Special Agent Jamie Rohrbaugh, who went to the parking lot to search the vehicle. Id. at 18:24-19:3.

Broulik, Special Agent Richard Holden and Steele County Sheriff's Deputy Darrin Helget went to a conference room adjacent to Broulik's work station. Id. at 19:19-22. Holden and Helget questioned Broulik for approximately 35 minutes in the conference room with the door open. Id. at 20:4-6, 25:14. Rohrbaugh was also present for portions of the interview, which was not preceded by any Miranda warnings. Id. at 20:12-19, 43:17-19.

During the questioning, Broulik sat in the seat furthest from the door, with Holden and Helget between him and the door. Id. at 55:8-16. Broulik was not handcuffed or physically restrained. Id. at 23:9-13. All three officers were armed, though only Helget's weapon was visible. Id. at 21:1-18. At no point did the officers tell Broulik that he was free to leave or advise him that he did not have to answer questions. Id. at 43:12-16.

During the interview, Broulik repeatedly denied that child pornography would be found on his computer. Id. at 46:7-12. Broulik also acknowledged that he had a smartphone, but denied that

2

child pornography would be found on his phone and declined to consent to a search of his phone. Id. at 56:2-6. The questioning concluded when Broulik requested legal representation. Id. at 51:12-16. The officers seized Broulik's phone at the end of the interview. Id. at 31:4-6.

While the officers were questioning Broulik, additional officers executed the search warrant on Broulik's vehicle. The officers located a laptop computer and thumb-drive and determined that both contained child pornography. Id. at 25:21-26:8. The searching officers relayed this information to Holden and Helget, and Helget arrested Broulik on state child pornography charges.[1] Id. at 52:2-6. Officers obtained a search warrant for the phone the next day. Id. at 31:12-18.

On July 15, 2012, the chief magistrate judge recommended that the court deny Broulik's motions to suppress (1) statements made during the May 24, 2012, interview and (2) evidence discovered on the seized phone. Broulik objects.

## DISCUSSION

The court reviews the report and recommendation of the magistrate judge de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2(b).

---

[1] The officers maintain that, when the questioning commenced, they had no plans to arrest Broulik. Mot. Hr'g Tr. 21:19-24.

**I.   Statements to Officers**

Broulik first moves to suppress the statements he made to officers, arguing that the interview was a custodial interrogation and he was not apprised of his Miranda rights. "Officers must inform suspects of their Miranda rights before subjecting them to custodial interrogations. Failure to do so results in a violation of the suspect's Fifth Amendment rights and renders any statement gained from the violation inadmissible in the government's case-in-chief." United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (citation omitted). The government responds that Broulik was not in custody during the interview.

In determining whether an interrogation was custodial, the court considers several factors, including:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and,] (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990). "The analysis depends upon a review of the totality of the circumstances, and [t]he ultimate test is whether a reasonable

4

person in that position would have felt free to end the interview." United States v. Sanchez, 676 F.3d 627, 630-31 (8th Cir. 2012) (alteration in original) (citation and internal quotation marks omitted).

Here, the officers never informed Broulik that the questioning was voluntary or that he was free to leave. The officers also took possession of Broulik's keys and wallet. And although Broulik selected the room in which the questioning took place and the door to that room was open, the interview was initiated and controlled by the officers. See Mot. Hr'g Tr. 19:19-20:6. Moreover, the officers repeatedly questioned Broulik about the child pornography allegations and emphasized the strength of the evidence against him. See United States v. Carter, 884 F.2d 368, 372 (8th Cir. 1989) (finding interrogation to be custodial when officers questioned suspect in employer's office and confronted him with "damning evidence of guilt"). Finally, Broulik was arrested at the conclusion of the interrogation. After a de novo review, the court finds that a reasonable person would not have felt free to terminate the interview. As a result, because Broulik was not given Miranda warnings prior to the custodial interview, suppression of the statements made during the interview is warranted. See Carter, 884 F.2d at 372. Therefore, the court sustains Broulik's objection as to the statements made to officers.

5

**II. Seizure of Phone**

Broulik next argues that evidence from his cellular phone should be excluded as fruit of the poisonous tree because officers discovered the existence of the phone during the custodial interview. See United States v. Villa-Gonzalez, 623 F.3d 526, 534 (8th Cir. 2010) ("The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure ... but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." (alteration in original) (citation and internal quotation marks omitted)). In the context of Miranda warnings, however, "[t]he exclusion of unwarned statements ... is a complete and sufficient remedy for any perceived Miranda violation." United States v. Patane, 542 U.S. 630, 643 (2004) (alterations in original) (citation omitted). In other words, "the lack of a Miranda warning does not justify the suppression of the physical evidence seized pursuant to a search warrant derived from a voluntary un-warned statement." Villa-Gonzalez, 623 F.3d at 535 (citation and internal quotation marks omitted). As a result, suppression of the cellular phone is warranted only if Broulik's statements were involuntary.

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. Vega, 676 F.3d 708, 718 (8th Cir.

2012) (citation and internal quotation marks omitted). "The court consider[s], among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." Id. (alteration in original) (citation and internal quotation marks omitted). "Whether a defendant received Miranda warnings ... [is] important, although not dispositive, in determining voluntariness." Id. (citation and internal quotation marks omitted). Here, although Broulik did not receive Miranda warnings, there is no evidence in the record of police coercion, threats, or violence. Moreover, there is no evidence that lack of maturity, lack of education or a compromised mental or physical condition compelled Broulik to answer the officers' questions. As a result, the court finds that Broulik's statements to the officers were voluntary, and suppression of the cellular phone is not warranted. Therefore, this portion of the objection is overruled.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's objection to the report and recommendation [ECF No. 41] is sustained in part, consistent with this order;

2. The motion to suppress evidence obtained as a result of search and seizure [ECF No. 20] is denied; and

7

3. The motion to suppress statements, admissions and answers [ECF No. 21] is granted.

Dated: September 3, 2013

                                             s/David S. Doty
                                             David S. Doty, Judge
                                             United States District Court